IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JOHN B. WOODS, M.D., and<br>TOM MCDONALD, M.D.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DRUG ENFORCEMENT<br>AGENCY, LORETTA E. LYNCH, *United States<br>Attorney General,* UNITED STATES<br>DEPARTMENT OF JUSTICE, and CHUCK<br>ROSENBERG, *Acting Administrator of the<br>Drug Enforcement Agency,*<br><br>Defendants. | Case No. 1:16-cv-01289-STA-egb |

## REPORT AND RECOMMENDATION

Before the Magistrate Judge on referral for a report and recommendation is the Temporary Restraining Order of John Woods, M.D. ("Dr. Woods") and Tom McDonald, M.D. ("Dr. McDonald") pursuant to Federal Rule of Civil Procedure 65. Drs. Woods and McDonald petition this Court for entry of a Temporary Restraining Order enjoining Respondents from prohibiting Dr. Woods and Dr. McDonald from working at Henderson County Community Hospital ("HCCH") in Lexington, Tennessee, as hospitalists while an employment waiver requested pursuant to 21 C.F.R. § 1301.76(a) is applied for and processed. A hearing on this matter was held ex parte on November 15, 2016.

An ex parte temporary restraining order may be requested by the filing of a motion or complaint seeking such relief. W.D. Tenn. Loc. R. 65.1. Courts examine four factors in deciding whether a temporary restraining order is appropriate: "(1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable

injury; (3) whether issuance of [a TRO] would cause substantial harm to others; and (4) whether the public interest would be served by issuance of [a temporary restraining order].'" *Kendall Holdings, Ltd. v. Eden Cryogenics, LLC*, 630 F.Supp.2d 853, 860 (S.D. Ohio 2008) (quoting *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)); *see also* Fed. R. Civ. P. 65.

Here, the Magistrate Judge recommends a finding that the movants have met the four factors listed. First, Drs. Woods and McDonald have demonstrated that they have a strong likelihood of success on the merits. The DEA knew of the waiver requirement and Dr. Woods's work at HCCH before Dr. Woods began working at HCCH. Dr. Woods's Declaration, at ¶¶ 8-10. Yet, the DEA did not mention or require any waiver before Dr. Woods began working at HCCH. Dr. Woods's Declaration, at ¶¶ 11-12. Thus, despite Dr. Woods's efforts to keep the DEA apprised of his employment, at no point until November 10, 2016, did the DEA inform HCCH or Dr. Woods of the need for a waiver and his inability to work while the waiver was processed. Dr. McDonald had been working at HCCH for approximately twelve (12) years before the DEA began its enforcement of the waiver. Dr. McDonald's Declaration, at ¶ 11. Dr. McDonald has had not continuing obligations with the DEA since 2002. *Id*. at ¶¶ 8-9. Dr. McDonald has renewed his DEA license every three years since 2002 without any problems or mention of a waiver. *Id*. at ¶ 10. At no time before November 10, 2016 did the DEA inform Dr. McDonald or HCCH of the need for a waiver and Dr. McDonald's inability to work while the waiver was processed. *Id*. at ¶¶ 12-13. Given this passage of time (nineteen months for Dr. Woods and fourteen years for Dr. McDonald), movants have demonstrated a strong likelihood of success on the merits in their arguments that the laches doctrine prohibits the DEA's unreasonably delayed enforcement of the waiver regulation; the DEA is improperly applying a new rule retroactively; and the DEA's actions are arbitrary and capricious.

Second, the movants have demonstrated that they would suffer irreparable injury. More than seventy-five percent (75%) of Dr. Woods's income and all of Dr. McDonald's income comes from their respective work at HCCH. Dr. Woods's Declaration, at ¶ 13; Dr. McDonald's Declaration, at ¶ 15. Dr. Woods and Dr. McDonald's loss of income here is irreparable harm because Dr. Woods and Dr. McDonald cannot recover damages. *Feinerman v. Bernardi*, 558 F. Supp.2d 36, 51 (D.C.D.C. 2008) ("But where, as here, the plaintiff in question cannot recover damages from the defendant due to the defendant's sovereign immunity, any loss of income suffered by the plaintiff is irreparable *per se*."); *Caspar v. Snyder*, 77 F. Supp.3d 616, 641 (E.D. Mich. 2015) ("Where the availability of a money damage remedy is significantly in doubt because of an immunity defense, money damages are not deemed an adequate remedy, rendering the harm irreparable.").Thus, Dr. Woods's and Dr. McDonald's livelihoods are substantially and irreparably harmed by the DEA's enforcement of this waiver requirement. Moreover, given the nature of the small community of Lexington, Tennessee, reputation damage and loss of patients may occur if the doctors are prohibited from working during the time it takes for this waiver to be applied for and processed.

Third, the Magistrate Judge analyzes whether issuance of the TRO would cause substantial harm to others. Given the movants' cooperation and good standing with the DEA to date, the fact that both doctors are licensed and practicing with full prescribing authority, and the passage of time and retroactive nature of this waiver, the Magistrate Judge cannot find that issuance of the TRO would cause substantial harm to others. Indeed, not issuing the TRO would cause harm to many, as Dr. Woods and Dr. McDonald are the only two hospitalists at HCCH. Dr. Woods's Declaration, at ¶ 14; Dr. McDonald's Declaration, at ¶ 16. While the doctors are waiting for processing of these waivers, HCCH and the community of Henderson County are

being harmed because HCCH unexpectedly has no hospitalist to admit and serve the needs of its patients. Dr. Woods's Declaration, at ¶ 14; Dr. McDonald's Declaration, at ¶ 16.

Finally, movants have demonstrated that public interest would be served by issuance of this TRO. As stated above, the DEA's actions have resulted in HCCH unexpectedly having no hospitalist to admit and serve its patients. Dr. Woods's Declaration, at ¶ 14; Dr. McDonald's Declaration, at ¶ 16. Thus, HCCH and the community HCCH serves are harmed. Further, HCCH patients who are currently being treated by Dr. Woods or Dr. McDonald will suffer substantial harm in losing their physician. Thus, public interest is served by issuing a TRO to allow movants to continue to work at HCCH while their waiver is processed.

For all these reasons, the Magistrate Judge recommends that this Court grant a temporary restraining order to prohibit Respondents from preventing Dr. Woods and Dr. McDonald from working at HCCH while the DEA processes their forthcoming employment waivers.

Respectfully Submitted this 15th day of November, 2016.

                                               **s/Edward G. Bryant**
                                               UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATION MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT AND RECOMMENDATION. 28 U.S.C. § 636(b)(1). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**