**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

---

| | | |
|---|---|---|
| **JOHN WOODS, M.D., and,** | ) | |
| **TOM MCDONALD, M.D.,** | ) | |
| | ) | |
| **Petitioners,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:16-cv-01289-STA-egb** |
| | ) | |
| **UNITED STATES DRUG** | ) | |
| **ENFORCEMENT** | ) | |
| **ADMINISTRATION, JEFF** | ) | |
| **SESSIONS,[1] United States** | ) | |
| **Attorney General, UNITED** | ) | |
| **STATES DEPARTMENT** | ) | |
| **OF JUSTICE, CHUCK** | ) | |
| **ROSENBERG, Acting** | ) | |
| **Administrator of the Drug** | ) | |
| **Enforcement Administration,** | ) | |
| | ) | |
| **Respondents.** | ) | |

---

### ORDER GRANTING RESPONDENTS' MOTION FOR SUMMARY JUDGMENT

---

In this action for injunctive relief and a declaratory judgment, Petitioners John Woods, M.D., and Tom McDonald, M.D., seek to prevent Respondents from enforcing 21 C.F.R. § 1301.76(a) against them with respect to their current or future employment as physicians with access to controlled substances. Petitioners decry what they claim to be Respondents' arbitrary enforcement. But in doing so, Petitioners force a confrontation with a fundamental principle of our Constitution's separation of powers—this Court's very authority to resolve the case before it.

---

[1] On February 9, 2017, Jefferson B. Sessions III ("Jeff Sessions") replaced Loretta E. Lynch as United States Attorney General. The Clerk is **DIRECTED** to substitute Attorney General Sessions for former Attorney General Lynch as a respondent. *See* Fed. R. Civ. P. 25(d).

Unlike the Supreme Court, the jurisdiction of the inferior federal courts consists solely of that which Congress grants. And of that which Congress gives, Congress may take away. Respondents direct the Court to a provision of the Controlled Substances Act that they believe strips the Court of jurisdiction over this action. The Court agrees.

Before the Court are the parties' motions for summary judgment (ECF Nos. 33 & 42-1). The parties have thoroughly briefed the issues in responses (ECF Nos. 42 & 46), replies (ECF Nos. 47 & 48), and even in a separate motion (ECF Nos. 38 & 45), making the instant Motions ripe for decision. For the reasons set forth below, Respondents' Cross Motion for Summary Judgment is **GRANTED**. This action is hereby **DISMISSED** for want of jurisdiction but without prejudice. Accordingly, all pending motions are **DENIED** as moot.[2]

I.      **BACKGROUND**

   A.      **Factual Background**

The following facts are undisputed by the parties. *See* Woods and McDonald's Statement of Material Facts, Feb. 15, 2017, ECF No. 34; Resp'ts' Resp. to Pet'rs' Statement of Material Facts, Mar. 15, 2017, ECF No. 42-2. Petitioners are both licensed physicians employed by the Henderson County Community Hospital ("HCCH") in Lexington, Tennessee. In order to prescribe and handle controlled substances, a physician must obtain a registration from the Drug Enforcement Administration ("DEA"). Both Petitioners voluntarily surrendered their DEA registrations while undergoing inpatient treatment for addiction and substance abuse—Woods in

---

[2] Specifically, Petitioners' Motion for Summary Judgment (ECF No. 33), Petitioners' Motion to Strike Respondents' Answer (ECF No. 37), and Respondents' Motion for Leave to File Answer (ECF No. 38) are **DENIED** as moot and without prejudice as the Court lacks the authority reach the merits of those Motions.

2011 and McDonald at some point before 2002. Since 2013 and 2002 respectively, however, Woods and McDonald have had full prescribing authority. During the approximately 14 years that McDonald has had such authority, he has reapplied for and been granted DEA registration five times.

In their Second Amended Complaint, Petitioners allege the following facts that Respondents lack sufficient information to either admit or deny. *See* Second Am. Compl., Dec. 2, 2016, ECF No. 22; Answer, Feb. 24, 2017, ECF No. 36. Woods and McDonald are the only two hospitalists at HCCH. McDonald has been working at HCCH since 2002, though he was a staff doctor for the vast majority of that time. Woods has been working at HCCH as a hospitalist since April 2015.

Since his involvement with the DEA began, Woods has attempted to keep the DEA informed of his employment. Prior to beginning his work at HCCH, Woods informed the DEA that he would be working at HCCH. Also before his employment began at HCCH, Woods spoke with a DEA agent about his recordkeeping responsibilities at HCCH in light of his agreement with the DEA. The DEA agent confirmed that Woods did not have to submit prescriptions written for inpatient treatment. Thus, the DEA knew that Woods would be working at HCCH.

On November 10, 2016, the DEA was on-site at HCCH, and an agent informed Dr. Woods that he believed that, pursuant to 21 C.F.R. § 1301.76(a), Woods must have a waiver from the DEA in order to work at HCCH. The agent later confirmed this belief, called Woods, and told him that HCCH must have a waiver from the DEA in order for Woods to work at HCCH. The agent told Woods that he could not work at HCCH while the waiver was applied for and processed. Woods was suddenly and unexpectedly out of work. Before the agent's

conversations with Woods on that day, the DEA had never told Woods that he needed a waiver to work at HCCH. The DEA agent also called HCCH that day and told HCCH that it must have a waiver for Woods to work at HCCH and Woods could not work until the DEA granted a waiver. The DEA agent further informed HCCH that it must apply for a waiver for any other physician who had surrendered his or her DEA registration for cause. The agent instructed HCCH that any such physician could not work until the DEA granted a waiver. HCCH identified McDonald as the only other physician working at HCCH that met this criterion. HCCH then informed both Woods and McDonald that they could not work again until the DEA granted a waiver. This was also the first time that McDonald had heard of the waiver requirement.

The DEA granted HCCH waivers for both Woods and McDonald on January 18, 2017. Decl. of Kerry R. Hamilton, at 1, Apr. 12, 2017, ECF No. 48-2.


### B.      Procedural History

Petitioners filed their initial Complaint requesting a temporary restraining order ("TRO") and a preliminary injunction (ECF No. 1) on November 10, 2016, and an Amended Complaint (ECF No. 2) the following day. The Court issued a TRO on November 15, 2016, preventing Respondents from enforcing 21 C.F.R. § 1301.76(a) against Petitioners and thereby precluding them from performing their duties as physician-hospitalists at the HCCH. Order Adopting R & R and Granting Pls.' Motion for TRO Enjoining the U.S. D.O.J. and U.S. D.E.A. from Enforcing 21 C.F.R. § 1301.76(a) Against John Woods, M.D., and Tom McDonald, M.D., Nov. 15, 2016, ECF No. 13. On December 6, 2016, the Court held a hearing regarding Petitioners' request for a

preliminary injunction. Min. Entry, Dec. 16, 2016, ECF No. 30; *see* Motion for Prelim. Inj., Nov. 23, 2016, ECF No. 18. At the hearing, Respondents consented to entry of a preliminary injunction allowing the uninterrupted work of Petitioners during the litigation of this case. Min. Entry, ECF No. 30. In the order that followed, the Court found that all four factors used in analyzing a preliminary injunction issue swung in Petitioners' favor, including likelihood of success on the merits. Prelim. Inj., Dec. 12, 2016, ECF No. 32. Accordingly, the Court issued an injunction. Order Granting Motion for Prelim. Inj., Dec. 6, 2016, ECF No. 31; Prelim. Inj., ECF No. 32.

As of the filing of the Second Amended Complaint on December 2, 2016, Petitioners request a declaratory judgment holding that enforcement of 21 C.F.R. § 1301.76(a) against them is barred for three reasons: (1) enforcement would violate the doctrine of laches, (2) enforcement would be arbitrary and capricious under section 706(2)(A) of the Administrative Procedures Act ("APA"), and (3) enforcement would constitute an impermissible, retroactive application of Respondents' interpretation of section 1301.76(a). *See* 28 U.S.C. §§ 2201, 2202. Petitioners also request a permanent injunction prohibiting Respondents from enforcing section § 1301.76(a) against them at HCCH or any other future employment. Second Am. Compl., at 16, ECF No. 22. Petitioners' Motion for Summary Judgment (ECF No. 33) makes the above arguments and others, while Respondents' joint Response and Cross-Motion (ECF No. 42) raises the issues of subject-matter jurisdiction, standing, and sovereign immunity, in addition to responding to Petitioners' arguments.

## II.     STANDARD OF LAW

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56.  When deciding a motion for summary judgment, the Court must review all the evidence and draw all reasonable inferences in favor of the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, and it "may not make credibility determinations []or weigh the evidence." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  "The standards . . . for summary judgment do not change when, as here, 'both parties seek to resolve [the] case through the vehicle of cross-motions for summary judgment.'"  *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

# III.   ANALYSIS

## A.  Statements of Undisputed Material Facts

Before beginning its analysis, the Court finds it necessary to address a procedural issue[3] related to the statements of undisputed material facts that must accompany summary judgment motions.  Local Rule 56.1 provides that "any motion for summary judgment made pursuant to Fed. R. Civ. P. 56 shall be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial."  W.D. Tenn. R. 56.1(a). This includes cross-motions.  Petitioners correctly point out that Respondents' cross-motion failed to include a statement of undisputed material facts.  They urge the Court to deny Respondents' cross-motion because of this deficiency and cite cases where district courts have done exactly that.  Pet'rs' Resp. to Resp'ts' Cross Motion for Summ. J., at 2, Mar. 29, 2017, ECF No. 46.

The Court declines to do so here for two reasons.  First, this situation, where both parties have moved for summary judgment, reduces the prejudice of Respondents' error.  The purpose of the requirement of a statement of undisputed material facts is "to assist the Court in ascertaining whether there are any material facts in dispute."  W.D. Tenn. R. 56.1(a).  Here, because both parties have moved for summary judgment, they agree "that there is no genuine

---

[3] Petitioners also complain that several of Respondents' responses to their statement of undisputed material facts are inadequate responses under the local rules.  But this issue is simple enough to deal with.  A response to a statement of undisputed material facts must either "agree[]" that the fact is undisputed" or "demonstrat[e] that the fact is disputed" with a specific citation to the record.  W.D. Tenn. R. 56.1(b).  "Failure to respond to a moving party's statement of material facts . . . shall indicate that the asserted facts are not disputed for purposes of summary judgment."  W.D. Tenn. R. 56.1(d).  Accordingly, such facts will be assumed to be undisputed for the purposes of these Motions.

dispute as to any material fact . . . ."  Fed. R. Civ. P. 56(a); *see* John Woods, M.D. and Tom McDonald, M.D.'s Summ.-J. Motion, at 1, Feb. 15, 2017, ECF No. 33 ("Woods and McDonald move this Court for entry of a judgment in their favor on the grounds that there are no genuine issues of material fact for trial."); Mem. in Opp'n to Pet'rs' Motion for Summ. J. and in Supp. of Resp'ts' Cross Motion for Summ. J.. at 3, Mar. 15, 2017, ECF No. 42 (citing Rule 56's summary judgment standard).

Second, this case has a "limited factual universe—no discovery has been propounded or depositions taken."  Mem. in Further Supp. of Resp'ts' Cross Motion for Summ. J., at 2 n.1, April 12, 2017, ECF No. 48.  Although Respondents did not file their own statement of undisputed material facts, they did respond to Petitioners' statement, which is relatively short. *See* Woods and McDonald's Statement of Material Facts, ECF No. 34; Resp'ts' Resp. to Pet'rs' Statement of Material Facts, ECF No. 42-2.  While the Court agrees with Respondents' reasoning here, the Court admonishes them to avoid such error in the future by either requesting an excuse of this requirement prior to filing a summary judgment motion or collaborating with opposing counsel in the event that the parties file cross-motions.  *See, e.g.*, *Oakley v. City of Memphis*, 2010 U.S. Dist. LEXIS 143451, at *6 (W.D. Tenn. June 17, 2010) ("As part of their cross-motions, the parties filed a Joint Statement of Undisputed Material Facts.").  Nonetheless, the Court finds that the factual record is sufficiently developed in order to rule on both summary judgment motions without a statement of undisputed material facts from Respondents.

Based upon the undisputed material facts before it, the Court now turns to the issue of subject-matter jurisdiction.

### B.    The Jurisdiction-Stripping Effect of 21 U.S.C. § 877

Federal Rule of Civil Procedure 12 provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  "The judicial Power of the United States, shall be vested in one supreme Court, *and in such inferior Courts as the Congress may from time to time ordain and establish*."  U.S. Const., art. III, § 1 (emphasis added).  "The judicial Power shall extend to all Cases . . . arising under . . . the Laws of the United States . . . ."  U.S. Const., art. III, § 2, cl. 1.  But "Congress, having the power to establish the courts, must define their respective jurisdictions. . . . And it would seem to follow, also, that . . . Congress may withhold from any court of its creation jurisdiction of any of the enumerated controversies."  *Sheldon v. Sill*, 49 U.S. 441, 448–49 (1850).

While Petitioners brought this challenge under the Administrative Procedure Act (the "APA"), "[t]he APA is not a jurisdiction-conferring statute; it does not directly grant subject matter jurisdiction to the federal courts."  *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494 (6th Cir. 2014) (citing *Califano v. Sanders*, 430 U.S. 99, 105 (1977)).  In their Second Amended Complaint, Petitioners assert that the Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1361.[4]  Respondents disagree, citing a provision of the Controlled Substances Act (the "CSA") that vests jurisdiction for review of certain matters exclusively in the United States Court of Appeals.  *See* 21 U.S.C. § 877.  Section 1331, the federal question statute, "confer[s] jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate."  *Sanders*, 430 U.S. at 105; *see also Hill v. Norton*,

---

[4] Section 1331 is the general federal question statute, while section 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.

275 F.3d 98, 103 (D.C. Cir. 2001) ("[C]hallenges brought under the APA fall within the reach of the general federal jurisdiction statute, 28 U.S.C. § 1331.").  Section 1331 is, however, "subject . . . to preclusion-of-review statutes created or retained by Congress."  *Sanders*, 430 U.S. at 105.  Petitioners correctly point to section 702 of the APA, which confers upon a party "adversely affected or aggrieved by agency action . . . [the right] to [seek] judicial review."  5 U.S.C. § 702.  But also correctly, Respondents cite to section 704 of the APA, which further requires, unless otherwise provided by statute, that the agency action be final and one "for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  Thus, the APA narrows section 1331's broad grant of jurisdiction.  *Hosseini v. Johnson*, 826 F.3d 354, 360 (6th Cir. 2016) (stating that the "agency action" within the meaning of section 702 must also be "final" within the meaning of section 704).  Respondents further assert that 21 U.S.C. § 877 deprives the Court of jurisdiction over this matter completely.  It provides:

> All final determinations, findings, and conclusions . . . shall be final and conclusive decisions of the matters involved, except that any person aggrieved . . . may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located . . . .

21 U.S.C. § 877.  This statute has the effect of removing the district courts' jurisdiction,[5] and the Sixth Circuit has held that "[u]nder 21 U.S.C. § 877, the courts of appeals have exclusive jurisdiction over final determinations of the [DEA]."[6]  *Mokdad v. Lynch*, 804 F.3d 807, 814 (6th

---

[5] This applies with equal force with respect to both 28 U.S.C. §§ 1331 and 1361.  *See Kadonsky v. Holder*, 2014 U.S. Dist. LEXIS 81215, at *1 (D.D.C. June 10, 2014) (dismissing a *pro se* petition for a writ of mandamus brought under 28 U.S.C. § 1361 because of 21 U.S.C. § 877's removal of jurisdiction); *Young v. U.S. Att'y Gen.*, No. CV 12-1623 (UNA), 2013 WL 1934949, at *1 (D.D.C. May 9, 2013) (same).

[6] "[I]t is worth noting . . . that as a matter of practice almost all cases challenging DEA

Cir. 2015). They argue that if Petitioners' complain of a final agency action, as is necessary for this Court to have jurisdiction to begin with, then the action, because it involved a regulation promulgated under the authority of the CSA, is also a "final determination[], finding[], [or] conclusion[]" within the meaning of section 877, and therefore Congress has vested exclusive jurisdiction over the matter with the courts of appeals.

## C.    "Interstitial Space" Between the APA and the CSA

Section 877 applies only if Respondents' enforcement of 21 C.F.R. § 1301.76(a) against Petitioners constitutes a "final determination[], finding[], [or] conclusion[]." 21 U.S.C. § 877. Respondents raise the issue of a possible gap between the APA's definition of "final agency action" and section 877's definition of a "final determination[], finding[], [or] conclusion[]" but cite *John Doe, Inc. v. Drug Enforcement Administration*, 484 F.3d 561 (D.C. Cir. 2007) in support of the proposition that it does not. The Sixth Circuit has not previously considered the issue. The D.C. Circuit, in the case relied upon by Respondents, "s[aw] no reason . . . that the word 'final' in [section] 877 should be interpreted differently than the word 'final' in the APA." *Id.* at 566 n.4. It also acknowledged the difference between the wording of "'final agency action' under [section] 704 . . . [and] 'final determination[ ], finding[ ], [or] conclusion[ ]' under [section] 877," but it held that there exists no "interstitial space" between them. *Id.* at 568–70; *see also id.* at 568 (citing Determination, *Black's Law Dictionary* (8th ed. 2004)) ("Perhaps 'agency action' encompasses more than 'determinations, findings, and conclusions,' but the permit denial at issue here falls squarely within the plain meaning of 'determination.'"). But the

_____

decisions under the CSA have been filed directly in the courts of appeals pursuant to 21 U.S.C. § 877." *John Doe, Inc. v. DEA*, 484 F.3d 561, 568 (D.C. Cir. 2007) (collecting cases).

D.C. Circuit is not binding upon the decisions of this Court. And this Court is struck by the divergent language that Congress employed in these statutes. In support of its holding, the D.C. Circuit also raised policy considerations: a "narrow interpretation of [section] 877 encourages forum shopping and encourages dissatisfied claimants to 'jump the gun' by going directly to the district court to develop their case instead of exhausting their administrative remedies." *Id.* at 570. These are undoubtedly important concerns, but the Court is not persuaded that this basis is sufficient to overlook Congress's choice of words. The judiciary after all is not empowered to alter the commands of Congress in order to achieve a "better" result. *United States Nat'l Bank v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 454 (1993) ("A statute's plain meaning must be enforced . . . .); *Container Service Co. v. United States*, 345 F. Supp. 235, 241 (S.D. Ohio 1972) (citation omitted) ("We cannot ignore the plain meaning of the statutory language and the clear indications of Congressional intent to achieve a more equitable result."); *see also Bank One Chi., N.A. v. Midwest Bank & Tr. Co.*, 516 U.S. 264, 279 (1996) (Scalia, J., concurring) (citing *United States v. Pub. Util. Comm'n*, 345 U.S. 295, 319 (1953) (Jackson, J., concurring)) ("The law is what the law says . . . ."); *United Steelworkers v. Weber*, 443 U.S. 193, 216 (1979) (Burger, C.J., dissenting) ("The Court reaches a result I would be inclined to vote for were I a Member of Congress considering a proposed amendment of Title VII. I cannot join the Court's judgment, however, because it is contrary to the explicit language of the statute . . . ."). Thus, in the absence of binding authority, the Court will examine each of these statutes in detail.

In giving effect to a statute, the Court must apply the plain meaning of the statutory language. *United States v. Wiltberger*, 18 U.S. 76, 95 (1820); *Vergos v. Gregg's Enters.*, 159 F.3d 989, 990 (6th Cir. 1998) (quoting *Appleton v. First Nat'l Bank*, 62 F.3d 791, 801 (6th Cir.

1995)).  The Court "presume[s] . . . 'that [the] legislature says . . . what it means and means . . . what it says.'" *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017) (quoting *Dodd v. United States*, 545 U.S. 353, 357 (2005)).  But the Legislature "sometimes uses slightly different language to convey the same message." *DePierre v. United States*, 564 U.S. 70, 83 (2011) (quoting *Deal v. United States*, 508 U.S. 129, 134 (1993)).  Therefore, the Court "must be careful not to place too much emphasis on [a] marginal semantic divergence." *Id.*

Congress did not define "final," "determinations," "findings", "conclusions," or any combination of those terms in the CSA.  *See* 21 U.S.C. § 802.  Therefore, their plain, ordinary meaning will control.  Nor did Congress define "final" under the APA.  *See* 5 U.S.C. § 701.  The plain, ordinary meaning of "final" thus controls, but the Supreme Court has developed a test for determining finality under the APA.  *Bennett v. Spear*, 520 U.S. 154 (1997); *see also infra* Section III.D (applying the *Bennett* test).  But Congress did define "agency action."  5 U.S.C. § 701(b)(2).  For the purposes of the APA, an agency action is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).  And many of these terms are further defined within the statute.  *See* 5 U.S.C. § 551.  The Court's concern rises precisely from this information.  The fact that Congress has carefully controlled the meaning of one phrase but not the other suggests that something more than a "marginal semantic divergence" may be looming.

Final means "not to be altered, or undone . . . conclusive, decisive . . . constituting the ultimate in degree, achievement, or utilization."  Final, *Webster's Third New International*

*Dictionary* (1961).[7]  It can also mean "relating to or occurring at the end or conclusion . . . last, terminating." *Id.*  When something is final, it is therefore conclusive, last in time, or both.  Thus, for the purposes of the APA, when "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act" is no longer alterable by the agency or no other action can be taken by the agency, a party may seek judicial review of the action.  5 U.S.C. § 704.

A determination is "the settling and ending of a controversy[,] esp[ecially] by judicial decision[,] . . . [a] conclusion, . . . the resolving of a question by argument or reasoning[,] . . . [or] the act of deciding definitely and firmly[,] esp[ecially] regarding a course of action." Determination, *Webster's Third New International Dictionary*.  Findings are "the result of a judicial or quasi-judicial examination or inquiry[,] esp[ecially] into matters of fact as embodied in the verdict of a jury or decision of a court, referee, or administrative body."  Findings, *Webster's Third New International Dictionary*.  Conclusions are "an act or instance of concluding."  Conclusions, *Webster's Third New International Dictionary*.  This meaning of conclusions is not particularly helpful, but "concluding" is further defined as "final" in the sense of "last."  Concluding, *Webster's Third New International Dictionary*.  A conclusion in the singular form, however, is also a "reasoned judgment."  Conclusion, *Webster's Third New*

---

[7] Congress enacted the CSA in 1970, 91 Pub. L. 513 (1970), and the relevant provisions of the APA, though a number of times, in 1966.  89 Pub. L. 554 (1966).  Justice Antonin Scalia and Bryan Garner offer *Webster's Third New International Dictionary* as one of "the most useful and authoritative [dictionaries] for the English language generally and for the law" for the latter half of the 20th Century, but they also advise caution due to this particular dictionary's lack of usage notes.  Antonin Scalia & Bryan Garner, *Reading Law* 419. 422 & n.21 (2012).  Justice Scalia and Mr. Garner also recommend *The Random House Dictionary of the English Language* (2d unabridged ed. 1987), which the Court has also consulted, and it has noted any material divergence in its discussion.  Scalia & Garner, *supra*, at 423.

*International Dictionary*. Unlike with "determinations" or "findings," the use of "conclusions" in the plural appears to have some significance here as either meaning would not produce a necessarily illogical result. For example, finding, used in the singular form, can be an archaeological term that could lead to an absurdity in the context of the CSA if its meaning was forced upon "findings." *See* Finding, *Webster's Third New International Dictionary*. In its broadest sense, a finding could be interpreted as a "discovery" or "the act of a person or thing that finds." Finding, *The Random House Dictionary of the English Language* (2d unabridged ed. 1987). But as this still does not fit with the actions of the DEA, it is easy to see that Congress did intend to use "findings" in the plural form. "Determinations," however, does not have a separate definition from determination. *See* Determination, *Webster's Third New International Dictionary*. This creates a dilemma for the Court's interpretation of "conclusions" since Congress might have easily meant to have imparted the meaning of either the singular or plural form of the word based on their language usage in the same sentence of the statute. Other things being equal, the Court is inclined to defer to the language actually used by Congress. A common rule of statutory construction, however, guides the Court to the same result. The Court must, if possible, give effect to every word in a statute. *United States v. Perry*, 360 F.3d 519, 537 (6th Cir. 2004) (citations omitted); *see also Market Co. v. Hoffman*, 101 U.S. 112, 115–16 (1879) (stating that "no clause, sentence, or word shall be superfluous, void, or insignificant"); Scalia & Garner, *supra* note 7, at 423 (discussing this rule as the "surplusage canon," which provides that "[i]if possible, every word and every provision is to be given effect . . . ."). Since determination also means conclusion in the singular form, both forms of conclusion are captured by this provision of the CSA. To hold otherwise would be to make "conclusions" superfluous. But *The*

*Random House Dictionary of the English Language* lists comparable versions of both meanings under "conclusion" in the singular form and offers no separate meaning for "conclusions." Conclusion, *The Random House Dictionary of the English Language* (2d unabridged ed. 1987). While this might obviate the need to decide between a singular or plural form of "conclusion," determination's capturing of the "reasoned judgment" meaning of conclusion still requires the Court's use of the surplusage canon due to the various meanings and leads to the same result.

While the surplusage canon narrows down alternative definitions, it does not wholly cleanse the statute of redundancy. After all, the "*final* determinations, findings, and *conclusions* . . . shall be *final* and *conclusive* decisions . . . . 21 U.S.C. § 877 (emphasis added). The Court is confident that the phrase "shall be final and conclusive decisions" can be demarcated from "final determinations, findings, and conclusions" because the context of a conditional judicial review in the remaining portions of the statutory provision informs the Court's understanding of "final and conclusive decision." 21 U.S.C. § 877; *United States v. Santos*, 553 U.S. 507, 512 (2008) (citing *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)) (acknowledging that "context gives meaning" in statutory construction). While the subject "all final determinations, findings, and conclusions" refers to the administration of a particular matter by the DEA, the exception to "final and conclusive decisions" permitting judicial review by the United States Court of Appeals indicates that "final and conclusive decisions" functions to establish a general prohibition on judicial review of matters that fall within the scope of "final determinations, findings, and conclusions."

But the "final" that directly modifies "determinations, findings, and conclusions" remains. And the Court must grapple with the competing sense of "finality" that permeates the

meaning of the modified words in an endeavor to avoid any surplusage if at all possible. The use of "final" here is best understood as making the point that the decision, inquiry, judgment, or other last act must truly be at its end. This syntactic choice appears to embody the idea of the working hypothesis—the DEA might have reached a preliminary determination or a provisional conclusion. Such things are not a "final and conclusive decision" that cannot be reviewed except by the United States Court of Appeals. The DEA's action must have reached its end.[8] The Court is left to conclude that "final determinations, findings, and conclusions" simply refers to the decisions, judgments, inquiries, or other last act of the DEA's process that marks the end of the DEA's examination of the merits of a particular matter. "Final decisions" or "final decision" thus becomes a convenient and not incorrect shorthand for the otherwise cumbersome language of this provision.

At first glance, a decision seems remarkably different from "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." But a closer examination of "agency action" reveals that the phrase captures any final act taken by an agency. *See* 5 U.S.C. § 551(5)–(6), (13). By the terms of the APA, an agency action is "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* § 551(13). "'[O]rder' means . . . a final disposition . . . in a matter other than rule making . . . ." *Id.* § 551(6). And rule making is the "agency process for formulating, amending, or repealing a rule." *Id.* § 551(5). Thus, in terms of final acts by an agency, such action is necessarily either an order or rule making, both of which constitute an "agency action." As the

---

[8] As is seen in the Court's discussion of the *Bennett* test for finality, this meaning is still relative because not even "final" means an absolute end. *See Berry v. U.S. Dep't of Labor*, 832 F.3d 627, 633 (6th Cir. 2016).

DEA is unquestionably an agency, this means that any final decision is necessarily also a "final agency action." But is a "final agency action" also a final decision? The Court thinks it likely. Any action taken by DEA, once finalized, is captured by the plain language of section 877. "Decisions" seem to be the primary target of the language, but as it also contains reasoned judgments, the results of an inquiry, or other last acts, it would seem that end of the matter marks the beginning of the courts of appeals' jurisdiction.[9] Accordingly, the Court holds no gap exists between "final agency action" under the APA and "final determinations, findings, and conclusions" under the CSA.[10]

### D. Finality of Respondents' Enforcement of 21 C.F.R. § 1301.76(a)

The Court must now determine whether Respondents' enforcement of 21 C.F.R. § 1301.76(a) constitutes a "final agency action" under the APA, and therefore also a final decision under section 877 of the CSA. The Court finds it necessary to first delineate precisely what action of Respondents it is that Petitioners challenge in order to apply the *Bennett* test for finality. In Petitioners' Second Amended Complaint, Petitioners specifically refer to their claims as being brought under the APA. Petitioners challenge the Respondents' enforcement of 21

---

[9] The Court only qualifies this conclusion with the limitation contained within 21 U.S.C. § 877 that restricts that provision's applicability to Title 21. If the DEA were to be acting under a different title of the United States Code, the jurisdiction-stripping provision of the CSA would not apply. But that issue is of no consequence under the facts of this case, and the Court declines to wade into it further.

[10] While reaching the same conclusion as the D.C. Circuit, *see John Doe, Inc. v. DEA*, 484 F.3d 561, 568 (D.C. Cir. 2007), and what appears to be the majority of courts that have addressed the issue, the Court believes its statutory analysis was necessary to arrive at that conclusion, particularly where, as mentioned previously, Congress has carefully defined one phrase but not the other.

C.F.R. § 1301.76(a) against them because Respondents (1) unreasonably delayed in deciding to enforce the regulation, and such delay harmed Petitioners by causing them to lose their livelihoods; (2) cannot re-interpret and then retroactively apply a regulation against individuals who acted in reliance on the original interpretation; and (3) acted arbitrarily and capriciously in direct violation of section 706 of the APA.  But no party seems to directly argue that Respondents' decision to enforce 21 C.F.R. § 1301.76(a) against Petitioners is a "final agency action."  Petitioners clearly state that they "are not challenging a final action [by Respondents] under [either] the [APA or the CSA]."  Pet'rs' Reply to Resp'ts' Resp. Opposing the Motion to Strike, at 2, Mar. 3, 2017, ECF No. 45.  Respondents do not argue that their decision was a final action but assume that it is for the purposes of their own argument that this Court has been stripped of jurisdiction by section 877 of the CSA.  Resp. to Motion to Strike and Motion for Leave to File Answer, at 7, Mar. 13, 2017, ECF No. 38; Mem. in Opposition to Pet'rs' Motion for Summ. J. and in Supp. of Resp'ts' Cross Motion for Summ. J., at 6, Mar. 15, 2017, ECF No. 42.  Respondents alternatively argue that if the action is not final, then the Court should dismiss this matter because Respondents have not waived their sovereign immunity.  Resp. to Motion to Strike and Motion for Leave to File Answer, at 6–7, ECF No. 38; Mem. in Opposition to Pet'rs' Motion for Summ. J. and in Supp. of Resp'ts' Cross Motion for Summ. J., at 4–5, ECF No. 42.  Because the parties are not in disagreement on this particular issue, the Court might normally move on and resolve the question of sovereign immunity, where the parties do actually seem to disagree, but where, as here, the issue is relevant to the Court's authority to hear the matter, the issue is unavoidable.  *Cf. Gosa v. Mayden*, 413 U.S. 665, 707 (1973) (Stewart, J., dissenting) (citing *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17–18 (1951); *Indus. Addition Assn. v. Comm'r*,

323 U.S. 310, 313 (1945); *People's Bank v. Calhoun*, 102 U.S. 256, 260–61 (1880); *Cutler v. Rae*, 48 U.S. 729, 731 (1849)) ("One of the most basic principles of our jurisprudence is that subject-matter jurisdiction cannot be conferred upon a court by consent of the parties.").

The Supreme Court articulated a two-element test to determine finality under the APA in *Bennett v. Spear*, 520 U.S. 154 (1997): the action complained of (1) "must mark the consummation of the agency's decisionmaking process" and (2) "determine rights and obligations of a party or cause legal consequences." *Berry v. U.S. Dep't of Labor*, 832 F.3d 627, 633 (6th Cir. 2016) (citations omitted). The first element requires that the agency's action must have sufficiently progressed "such that judicial review of the action would [not] 'disrupt the orderly process of adjudication.'" *Id.* (quoting *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). The action complained of in *Berry* was the Department of Labor's denial of benefits to a son who had sought compensation under a federal statute providing "compensation and other services to current and former U.S. Department of Energy . . . employees and contractors (or their survivors)." *Id.* at 630. In that case, the Sixth Circuit first noted that the letter denying the benefits to the son "marked the end of [the Department of Labor's decisionmaking] process." *Id.* at 633. The Department's decision "came after plenary review of the . . . record," "was not 'informal' or 'tentative,'" and "'definitive[ly]' denied [the son]'s request." *Id.* (citations omitted). At that time, the son had "no opportunity for further administrative review of the request." *Id.* (citation omitted). The mere fact that the Department could "reopen [the son]'s claim at a later date" was insignificant as a "common characteristic of agency action . . . that does not make an otherwise definitive decision nonfinal." *Id.* (citation omitted). To satisfy the second element, the challenged action

"must have a 'sufficiently direct and immediate' impact on the aggrieved party and a 'direct effect on [its] day-to-day business." *Id.* (citation omitted). In *Berry*, the "determin[ation] . . . [of] ineligibility for compensation" was sufficient because, "[i]n the realm of government benefits," "the sole purpose of the administrative proceedings is to determine an individual's entitlement to benefits." *Id.*

First, the decision to enforce 21 C.F.R. § 1301.76(a) constitutes an agency action. As discussed above, an agency action is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). The denial of Petitioners' ability to work without obtaining a waiver plainly fits, at the very least within the "other compulsory or restrictive action" component of "sanction." *Id.* § 551(10)(G). But as the DEA's decision here amounts to an informal adjudication, it likely fits into any number of section 551's definitions. *See Pension Ben. Guar. Corp. v. United Air Lines, Inc.* (*In re UAL Corp.*), 2005 Bankr. LEXIS 2217, *15 n.8 (Bankr. N.D. Ill. Sept. 21, 2005) (citing *City of West Chicago v. NRC*, 701 F.2d 632, 644 (7th Cir. 1983)) ("Informal adjudication is a residual category including all agency actions that are not rulemaking and that need not he conducted through 'on the record' hearings.").

Second, as an agency action, the DEA's enforcement of 21 C.F.R. § 1301.76(a) is a final one. This action satisfies the *Bennett* test because the DEA's decisionmaking process has concluded and the decision had legal consequences for both Petitioners. At the initiation of this action, the DEA had completed its informal adjudication and determined that Petitioners could not work at HCCH under 21 C.F.R. § 1301.76(a) absent a waiver. And now, the DEA has granted HCCH those very waivers. At this juncture, the Court could not disrupt the DEA's

decisionmaking in enforcing 21 C.F.R. § 1301.76(a) because that decisionmaking has reached its endpoint. Once it informed HCCH that they could not employ Petitioners without a waiver, the DEA had effectively concluded its enforcement of the regulation. As to the second element, the DEA's decision prevented Petitioners from working, which, by stopping Petitioners from participating in their chosen professions, clearly amounts to a "direct effect on [Petitioners'] day-to-day business."

The Court concludes that the DEA's decision to enforce 21 C.F.R. § 1301.76(a) constitutes a final agency action within the meaning of the APA and therefore also a "final determination[], finding[], [or] conclusion[]" under the CSA.[11] Accordingly, the Court finds that the CSA precludes it from exercising jurisdiction over this matter.


**E.      Direct Challenge to Respondents' Enforcement of 21 C.F.R. § 1301.76(a)**

But Petitioners are not finished yet. As previously mentioned, they do not actually contend that the enforcement of 21 C.F.R. § 1301.76(a) is a final agency action. Instead, Petitioners claim that the Court has jurisdiction over this matter because they are not challenging a final action but the applicability of the regulation entirely. In support of this proposition, Petitioners direct the Court to *Monson v. Drug Enforcement Administration*, 589 F.3d 952 (8th Cir. 2009). In *Monson*, two farmers sought to enjoin the DEA from prosecuting them for growing "Cannabis sativa L.," where North Dakota state law allowed cultivation of a certain type of the plant that remained banned under the CSA as the drug "marihuana." *Id.* at 955; *see* 21

---

[11] In the alternative, the Court also holds that the DEA's action independently amounts a final decision under the CSA because the DEA applied the regulation to HCCH and Petitioners and decided that Petitioners could not work without HCCH obtaining waiver for them, thereby concluding the DEA's application of 21 C.F.R. § 1301.76(a).

U.S.C. § 812(c), Schedule I (c)(10). The *Monson* petitioners were not seeking review of the denial of a permit; they had not applied for a permit to begin with.[12] Rather, they "challenge[d] . . . the applicability of the CSA to their proposed activities and the authority of the DEA under the CSA to regulate those activities in the first instance." *Monson*, 589 F.3d at 961. In light of this distinction, the court held that the district court properly exercised jurisdiction over the action. *Id.* The Eighth Circuit reasoned that in order for section 877 to apply, "the DEA [must] issue a 'final decision' under the Act." *Id.* at 960. However, the Court finds it difficult to ascribe to this reading of section 877. At the outset, there is no requirement that the DEA "issue" anything. Congress knows how to distinguish between formal and informal adjudication. *See* 5 U.S.C. § 554 (setting forth the requirements for what has become known as formal adjudications); *see also Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 655 (1990) (discussing briefly the difference between formal and informal adjudication in the administrative law context); *West Chicago v. U.S. Nuclear Regulatory Comm'n*, 701 F.3d 632, 644 (7th Cir. 1983) ("Formal adjudications are those required by statute to be conducted through on-the-record proceedings. Informal adjudications constitute a residual category including 'all agency actions that are not rulemaking and that need not be conducted through "on the record" hearings.'"). If it wanted to restrict "determinations, findings, and conclusions" to formal adjudications—"where there has been [a] formal finding, conclusion or determination based on a record"—Congress could do so quite easily. *Monson v. DEA*, 522 F. Supp. 2d 1188, 1195 (D.N.D. 2007) (citation

---

[12] The North Dakota Commissioner of Agriculture had "submitted to the DEA applications for registration on behalf of Monson and Hauge for their proposed industrial hemp cultivation," but it appears that this was never resolved, as the North Dakota Legislative Assembly amended the "industrial hemp" statute to eliminate the requirement that farmers register with the DEA. *Monson*, 589 F.3d at 957. Instead of applying for registration on their own or beginning to grow industrial hemp, the petitioners filed suit in the district court. *Id.*

omitted) (articulating the view that section 877 only applies in such situations). But Congress has not done so, and there is thus no reason to suspect that Congress intended section 877 to involve only those decisions issued at the conclusion of a formal process. Again, the Court merely uses "final decision" as a convenient shorthand. As the Court has discussed at length, "determinations, findings, and conclusions" captures all final actions of the DEA under Title 21, and those final actions become "final and conclusive decisions" for the purposes of precluding the district courts *inter alia* from reviewing the actions. The application of the regulation fits well within that broad scope, and, as a result, section 877 precludes the Court from entertaining any challenge to the application of 21 C.F.R. § 1301.76(a).

## IV. CONCLUSION

Because the Court lacks subject-matter jurisdiction over this matter, Respondents' Cross-Motion for Summary Judgment is **GRANTED**. All other pending Motions are **DENIED** as moot. This action is hereby **DISMISSED** without prejudice.

It is so **ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: September 26, 2017.